UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTE S. BONNER,

              Petitioner,                Case No. 4:16-cv-12470
                                                               Hon. Terrence G. Berg
v.

WILLIE SMITH,

              Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Deonte S. Bonner was convicted after he pled guilty in the Wayne Circuit Court to second-degree murder, MICH. COMP. LAWS §750.317, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS §750.227b. He was sentenced under the terms of his plea agreement to a term of 19 to 40 years imprisonment for the murder conviction and a consecutive 2 years for the firearm conviction. The petition raises a single claim: Petitioner's guilty plea was involuntarily entered because he was coerced into accepting the last-minute plea offer. The Court will deny the petition because Petitioner's claim is without merit. The Court will also deny Petitioner a certificate of appealability, and it will deny permission to proceed on appeal in forma pauperis.

1

## I. Background

Petitioner was originally charged with first-degree murder and lesser offenses after he and accomplices attempted to rob individuals at a drug house in Detroit. During the robbery gunfire was exchanged. Petitioner was struck by a bullet, and one of the occupants of the house was shot and killed. Petitioner's DNA was recovered from blood stains at the scene, and he gave a false name when he was admitted at the hospital. See Dkt. 9-5, at 2-8.

On the morning scheduled for trial, the parties indicated that the prosecutor made a plea offer for the reduced charge of second-degree murder with a sentencing agreement of 23 to 40 years plus 2 years for the firearm charge. Dkt. 9-8, at 3-4. This was a reduction from a previous offer made by the prosecution calling for a minimum sentence of 36 years. *Id*. Petitioner rejected the offer and indicated his intent to proceed to trial. *Id*., at 4.

The jury venire was brought into the courtroom, the court read it preliminary instructions, and the court began the jury selection process. *Id*., at 6-24. After a lunch break, the prosecutor informed the court that family members of the victim "were amenable to mercy for this defendant so long as he took responsibility for what he did." *Id*., at 25. The prosecutor then indicated that a new plea offer was being made that called for a sentence of 19 to 40 years for the murder plus 2 years for the firearm offense. *Id*., at 26.

Petitioner was then placed under oath. *Id.*, at 27. He indicated that his attorney had informed him of the terms of the new plea bargain. *Id.* He indicated that he understood the terms called for a sentence of 19 to 40 years imprisonment for second degree murder plus a consecutive 2 years for the firearm offense. *Id.*

The court informed Petitioner of all the trial rights we would be waiving by pleading guilty. *Id.*, at 28-30. Petitioner denied that anyone had made any threats or promises other than the terms of the plea agreement to elicit his guilty plea. *Id.*, at 30. At no point did Petitioner complain that he was being rushed into making a decision whether to accept the plea bargain.

Petitioner then testified that on February 25, 2013, he went to a house located in Detroit with the intent to rob individuals inside. *Id.*, at 32. While inside, Petitioner exchanged gunfire with the occupants. *Id.* During the incident one of the occupants, Raynard Sebree, was shot and killed. *Id.* Petitioner denied that he acted in self-defense. *Id.* Petitioner then apologized to the family of the victim "for having the intention to commit this crime." *Id.*, at 33. The court accepted the plea. *Id.*, at 32.

Prior to sentencing, Petitioner moved to withdraw his guilty plea on the grounds that he was coerced into quickly agreeing to the plea bargain due to the imminence of trial. The trial court held two hearings on the motion. Dkts. 9-9 and 9-10. Petitioner testified at the second hearing, and he stated that he felt pressured by his attorney to accept the plea deal, and he was not given sufficient time to

3

decide. Dkt. 9-10, at 11-13. The court denied the motion, making the following findings:

> From what I'm understanding here the Defendant was not maintaining innocence or saying I don't want a plea or whatever might be. He just wanted the best offer that he could get, you know, and that's what plea offers are all about, you know, going back and forth. So to me that's not being coerced. It's, it's, there's a negotiation process is going, you know, back and forth. He wasn't put on the spot where he had to make a decision within a matter of a few minutes or something, you know, like that.
>
> As indicated, there was an initial plea offer of 30 to 60 years from the initial offer then there came the supervisor in to see about getting something less than that. There was some things done with the family and apparently even with the Defendant. And what counsel has said, there was some back and forth talk between the, with the parties where things were being communicated and even getting on the record where the judge was able to hear some things and things were done then.
>
> I don't see coercion or duress here. All I'm seeing here is somebody was trying to get the best offer that they could. It finally came down to you take the 19, I suppose, or we're going to trial, and this to me is not coercion. That's simply coming to your senses and saying, okay, that might be the best offer I can get and with the trial pending maybe I'd better just go ahead and take it, which to me, pardon the expression, seem to be a darn good offer based on how I see the facts in this particular case. And I can understand why it might have been an initial concern of 30 to something years.
>
> ***
>
> And even if it didn't necessarily cause substantial prejudice to the prosecution because of reliance on that, I just don't see anything wrong with the plea process itself here that would merit the matter being allowed to be withdrawn.
>
> So with those findings that I stated the Court will deny the motion to withdraw the plea for reasons stated. The matter will be referred for sentencing.

4

*Id.*, at 30-32.

Petitioner was then sentenced under the terms of the plea agreement.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising one claim:

> I. The trial court abused its discretion when it denied defendant's motion to withdraw his guilty plea when he felt coerced into taking it while denying committing the offense.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal for "lack of merit in the grounds presented." *People v. Bonner*, No. 324078, at *1 (Mich. Ct. App. Dec 10, 2014). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Bonner*, 866 N.W.2d 445 (Mich. 2015) (table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

5

decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

Petitioner claims that his guilty plea was involuntarily entered when he was pressured to accept the last-minute reduced sentencing agreement. The trial court rejected the claim on the merits after holding a post-conviction hearing, and then the Michigan Court of Appeals denied relief for "lack of merit in the grounds presented." *Bonner*, No. 324078, at *1. These decisions did not run contrary to, or involve an unreasonable application of, clearly established federal law.

Initially, the Court observes that Petitioner had no federal constitutional right to withdraw his guilty plea simply because he filed a motion to do so prior to sentencing. See *Hynes v. Birkett*, 526 Fed. Appx. 515, 521 (6th Cir. 2013). Unless a Petitioner's guilty plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's guilty plea is discretionary with the state trial court. See *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). Accordingly, to the extent Petitioner continues to argue that the trial court did not comply with state court rules and procedures concerning the withdrawal of guilty pleas prior to sentencing, the claim is not cognizable. *Id.*

As for the federal aspect of his claim, to satisfy due process a guilty plea entered in state court must be voluntarily and intelligently made. See *Shanks*, 387 F. Supp. 2d at 749; *Doyle v. Scutt*, 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional*

*Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn the state court's findings. *Id.*

It is only when the consensual nature of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper, that is, promises that have no proper relationship to the prosecutor's business (i.e. bribes). *Id.*

Here, Petitioner asserts that he was not given enough time to consider his options before entering his plea. But at the plea hearing he made no such complaint. And after hearing Petitioner's testimony at the post-conviction proceeding, the trial court found that there was no coercion or duress, and that it was simply a case of Petitioner finally obtaining a more favorable sentencing agreement than what was previously offered. The trial court's factual determination

8

is entitled to considerable deference, and Petitioner has not offered clear and convincing evidence that it was incorrect. See *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999); 28 U.S.C. § 2254(e)(1).

A valid plea requires "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir. Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). While it is true that the prosecutor's final plea offer required a quick decision because the court was in the process of picking a jury, that fact alone does not render Petitioner's decision to plead guilty involuntary. As stated, Petitioner made no comments during the plea hearing indicating that he desired more time to decide whether to proceed with trial or accept the offer. The fact that Petitioner had twice rejected plea offers prior to the trial date indicates that Petitioner previously had an ample opportunity to consider the option of foregoing trial and the risk of receiving a non-parolable life sentence in favor of pleading guilty to a reduced charge.

The prior offers and rejections reasonably support the trial court's finding that Petitioner's decision to accept the third last-minute reduced offer reflected nothing more the culmination of a lengthy plea negotiation process. Indeed, Petitioner ultimately accepted a plea deal that reduced his minimum sentence from 36 years to 19 years, and perhaps more significantly, it eliminated the possibility of

a non-parolable life sentence—to which Petitioner was exposed had he been convicted as charged. Given the record made in the state court and the findings made by the trial court after the post-conviction hearing, Petitioner has not demonstrated that the state court adjudication of his claim was contrary to, or involved an unreasonable application of, clearly established federal law. The petition will therefore be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate whether the petition should have been resolved in a different manner because Petitioner's claim is devoid of merit. The Court will therefore deny a certificate of appealability. The Court will also deny permission to appeal in forma pauperis because an appeal of this decision cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's pending motions, 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

                                            s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE

Dated: December 21, 2017

### Certificate of Service

I hereby certify that this Order was electronically submitted on December 21, 2017, using the CM/ECF system, which will send notification to each party.

                                            s/H. Monda
                                            Case Manager,
                                            in the absence of A. Chubb